1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  IVANA DJAK (NYBN 5516687)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340S
6      Oakland, California 94612
       Telephone: (510) 637-3918
7      FAX: (510) 637-3724
       ivana.djak@usdoj.gov
8

9  Attorneys for United States of America

10                          UNITED STATES DISTRICT COURT

11                        NORTHERN DISTRICT OF CALIFORNIA

12                                 OAKLAND DIVISION

13
   | UNITED STATES OF AMERICA, | ) | CASE NO. 4:24-mj-71750-MAG |
   |---|---|---|
   | Plaintiff, | ) | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
   | v. | ) | |
   | JASON NIOUS, | ) | |
   | Defendant. | ) | |

                                    INTRODUCTION

The defendant, Jason Nious, is a human trafficker with a violent and extensive criminal history. Over the past two decades, he has been convicted of human trafficking a minor, armed robbery, domestic violence, and firearm offenses. He has been sentenced to jail for over ten years, on multiple occasions. He has been on some form of probation and court supervision for the better part of those two decades—and he has been undeterred. There has never been a condition that has stopped the defendant from engaging in violent criminal conduct. During the brief periods between his lengthy sentences, the defendant has been arrested dozens of times. The community, and vulnerable women in particular, are not safe when the defendant is not in custody. Just in the past year, he has repeatedly been stopped on

the Oakland blade, an area known for human trafficking, and observed engaging in conduct such as attempting to force a woman into a car trunk, and threatening women to not identify themselves to law enforcement. On September 18, 2024, the defendant was found with a gun and is now federally charged as a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). There are no conditions that can provide for the safety of the community and to ensure the defendant's compliance with Court orders while his case is pending. The government thus moves for detention.

I. FACTUAL BACKGROUND

The government proffers facts herein in support of the argument that the defendant is a danger to the community and a flight risk through counsel.[1]

A. The September 18, 2024 Firearm Possession

On September 18, 2024, Oakland Police Department ("OPD") officers were conducting a surveillance operation in the 500 block of East 15th Street in Oakland, California, within the area of the Oakland blade, to apprehend an individual who had an active arrest warrant for firearm possession. During the operation, they observed an individual later identified as the defendant, standing next to the wanted person, and accessing a parked vehicle, his white 2015 Mercedes Benz S550, California license plate 8KOW458. Officers determined the vehicle was still registered to the defendant. The wanted person was detained for his warrant. The subject of the arrest warrant has been observed accessing a vehicle that contained a firearm. The defendant was then also detained for questioning because he was standing next to and appeared to be associated with the subject of the arrest warrant.

OPD officers then conducted a file check of the defendant using law enforcement databases which revealed that he was a convicted felon and was currently on Probation in San Francisco County,

---

[1] The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The Rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* FED. R. EVID. 1101(d)(3) (exception to application of federal evidence rules for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise."). Defendants at pretrial detention hearings are expressly authorized by the Bail Reform Act of 1984 to "present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B). Because the Act ratified existing practice, the government is likewise authorized to present information by proffer.

DETENTION MOTION
CASE NO. 4:24-mj-71750-MAG
2

California. These terms included that the defendant was subject to a warrantless search and seizure provision. As the defendant was on probation, and the terms of his probation allowed a law enforcement officer to search his vehicle and/or person, officers conducted a probation compliance search of the Mercedes. On the front passenger seat in plain view, there was a black sling bag which contained a brown Glock G48 9x19 9mm handgun, serial number BRUD435, and brown frame, and a loaded 10-round magazine. There was also a live 9mm round in the chamber of the handgun.

The defendant was arrested by OPD for being felon in possession of a firearm, carrying a firearm in public, and having a concealed firearm in a vehicle. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF") National Tracing Center subsequently provided a report to OPD with the results of their trace of the recovered weapon. The Glock handgun, serial number BRUD435, was imported from Austria by Glock, Inc. of Smyrna, Georgia. It was purchased on March 17, 2021, by a buyer in Phoenix, Arizona. A photo of the recovered firearm is below.



B.   The Defendant's Activity on the Oakland Blade

1.   The Oakland Blade

A "blade" is an area where commercial sex workers walk or stand around to meet "johns" or customers, and then perform sex acts for money.  One of the most active blades in the Bay Area is located in and around International Boulevard, in Oakland, California, currently between approximately 5th Avenue and 23rd Avenue.  The exact streets change throughout the years based on traffic patterns, law enforcement activity, and other variables.  This strip of International Boulevard is known throughout the San Francisco Bay Area for prostitution activity, and it has seen an increase in other violent crimes in the past several years as well, much of it related to the prostitution activity.

Often, sex workers engaging in commercial sex acts or "dates" on the Oakland blade are doing so at the direction of other individuals.  Individuals who monitor and control the commercial sex workers' activities are commonly referred to as "pimps."  Pimps regularly circle the blade in their vehicles to monitor the sex workers.  After completing dates, the women often get into the vehicles of their trafficker to give them the money they made.  Pimps also regularly attempt to recruit other women walking back and forth or standing on the blade to come work for them and will stop their vehicles next to them in order to speak to them—this practice is called "sweating."

A substantial portion of the prostitution that occurs on the Oakland blade is sex trafficking, namely the non-consensual exploitation of people for profit by individuals who use force, fraud or coercion to cause their victims to perform commercial sex acts.  A large portion of the commercial sex workers on the Oakland blade are sex trafficking victims.  A notable portion of these victims are minors.  Sex trafficking victims are often afraid of their pimps and fear reprisal if they make a report to law enforcement.  Accordingly, sex trafficking victims are often reluctant to speak to law enforcement.

Over the past few years, the Oakland blade has seen an increase in violent crimes such as sex trafficking and gun violence related to the sex trafficking.

### 2. The Defendant's Activity on the Oakland Blade

On February 3, 2023, OPD officers responded to a citizen complaint of a kidnapping in the area of International Boulevard and 6th Avenue in Oakland, California, an area of the Oakland blade. Video footage from the area depicts an individual later identified as the defendant parking a white Mercedes S550 sedan at a curb, opening the trunk, and then walking over to a woman standing nearby and pushing her into the trunk of the vehicle.

In the video footage, it appears the driver of the white Mercedes S550 sedan California license plate number 8KOW458, attempted to close the lid of the trunk on the woman inside the trunk when a passerby caught the driver's attention and distracted him, and the woman was able to escape. OPD officers who arrived on scene located the vehicle nearby and identified the defendant as the driver from the video. The victim, who was identified as an adult was in the back seat and appeared to have been crying. She was visibly shaken but did not want to cooperate with responding officers.

On April 5, 2023, OPD Officers and Federal Bureau of Investigation ("FBI") Task Force Officers ("TFOs") conducted a Human Trafficking operation in and around the Oakland blade in an effort to locate and recover victims of human trafficking. During the operation, investigators observed a young woman, possibly a minor, who appeared to be working as a sex worker, based on her clothing, appearance, idly standing or pacing in the area with no apparent destination, and speaking to drivers of stopping vehicles. That young woman entered the backseat of a white Mercedes S550, California license plate number 8KOW458. An OPD officer conducted a file check of the plate and learned the vehicle was registered to the defendant. The officer knew the defendant from the incident involving the February 2023 kidnapping and knew that the defendant was on probation for a gun-related offense. Shortly after viewing the young woman enter the vehicle, a marked OPD unit pulled the vehicle over for vehicle code violations. The defendant was the driver of the vehicle. During the stop, officers observed there was a front seat passenger—the same woman observed during the reported kidnapping incident

from February 3, 2023. The young woman in the back of the vehicle was also identified and determined to be an adult. Neither woman was willing to speak to law enforcement.

The defendant has been stopped by law enforcement in other similar situations, during which he tells a woman in his car to not speak to law enforcement and not identify herself. For example, on October 20, 2024, the Salinas Police Department ("SPD") pulled the defendant over in his white Mercedes S550, California license plate 8KOW458, for a vehicle code violation. During the stop, the defendant instructed a woman sitting in the passenger side to not disclose her name to the Salinas officer. Additionally, OPD Officers and FBI agents working together to combat violence on the Oakland blade, have seen the defendant on or near the Oakland blade, as well as a well-known blade in Salinas, on multiple occasions.

C.     The Defendant Has a Long and Violent Criminal History

The defendant has sustained several felony convictions and lengthy sentences. He has a history of committing new crimes while on probation and under court supervision. The defendant was indeed on probation in San Francisco County when the September 18, 2024 firearm offense occurred.

In 2022, the defendant was convicted in Alameda County of carrying a concealed firearm in his vehicle, in violation of CA PC 25400(A)(1). He was sentenced to 120 days in jail and a year of probation. The defendant was on probation at the time of this offense for a previous human trafficking conviction.

In 2017, the defendant was convicted in Alameda County for human trafficking of a minor, in violation of CA PC 236.1(A), and providing controlled substances to a minor in violation of California Health and Safety Code (HS) 11380(A), both felonies. In that case, the defendant trafficked a 16-year-old girl and plied her with methamphetamine to keep her compliant. The defendant was sentenced to 10 years in prison and ordered to register as a sex offender. The defendant was on probation at the time of this offense for a previous armed robbery conviction.

In 2006, the defendant was convicted in Alameda County for committing an armed robbery, a felony, in violation of CA PC 211. He was sentenced to 12 years in prison. He was originally arrested for and charged with murder. The defendant was on probation at the time of this offense for a previous domestic violence conviction. In 2003, the defendant was convicted of felony domestic violence in San Francisco County, California, in violation of CA PC 243(E)(1). He was sentenced to 16 days in jail and three years of probation.

Between his lengthy periods of incarceration, the defendant has been arrested dozens of times. Just in the period since his release in 2021 for the human trafficking offense, he has been arrested over ten times, including for numerous firearm and domestic violence offenses, and for failing to register as a sex offender. The defendant was on probation and under court supervision during each of those arrests. The defendant also has an extensive juvenile criminal record dating back to 1996, including for battery resulting in serious bodily injury. The defendant's criminal conduct spans decades and has become increasingly violent—and that record does not even capture the fact that the defendant has repeatedly been stopped by law enforcement on the Oakland blade after engaging in conduct such as shoving women into car trunks. The community, and vulnerable women in particular, are not safe when the defendant is not in custody.

## II.    LEGAL STANDARDS

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Typically, it is the government's burden to prove a defendant's danger to the community by clear and convincing evidence and to prove a defendant's flight risk by a preponderance of the evidence. *Id.* Danger to the community encompasses economic and pecuniary harm. *United States v. Reynolds*, 956

DETENTION MOTION   7
CASE NO. 4:24-mj-71750-MAG

F.2d 192, 192 (9th Cir. 1992) (citing *United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) (holding that danger not limited to physical harm, but includes the opportunity to exercise a substantial and corrupting influence within a labor union); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D.Tex. 1975) ("The 'danger to . . . the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large.").

The Court considers four factors to determine whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### III. ARGUMENT: THE DEFENDANT IS A DANGER TO THE COMMUNITY AND SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

The defendant is charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g), for the September 2024 conduct described above. *See* Dkt. No. 1. This is the defendant's first federal case, and he faces up to fifteen years in prison. The evidence against the defendant is strong. The firearm was found inside a vehicle registered to him, and a vehicle he has repeatedly been seen driving. The defendant was the only occupant of the vehicle in which the firearm was found.

The defendant was also notably on probation when the search of his vehicle was conducted and the when the firearm was found. He was on probation and under court supervision—and nonetheless, he was found with a firearm. And even after the September 2024 arrest, the defendant was again stopped on a blade in Salinas, with a woman in his vehicle, and instructed the woman not to speak to law enforcement. During the same period of probation, the defendant has been stopped by law enforcement on the Oakland blade repeatedly, including for conduct such as shoving a woman into a car trunk. He

was repeatedly observed instructing these women not to identify themselves. During the same period of probation, the defendant was also arrested repeatedly for firearm and domestic violence offenses. There is no probation condition or court supervision that will stop this defendant from carrying firearms and appearing on the Oakland blade with various women who are suspected to be sex workers and potential human trafficking victim.

And these recent law encounters while on probation, highlight that the defendant has been on some form of probation or supervision for nearly two decades, and has continued to violate any conditions various courts have tried to impose on him. The defendant was on probation for a 2003 domestic violence conviction when he engaged in an armed robbery in 2006. The defendant was on probation for the armed robbery still when he engaged in the human trafficking of a minor that resulted in his 2017 convictions for human trafficking and supplying a minor with drugs. The defendant had been recently released and was on probation for the human trafficking conviction when he incurred his 2022 firearm conviction. And the defendant was on probation when the presently charged conduct occurred. Lengthy prison sentences and probation conditions have never deterred the defendant from engaging in violent criminal conduct. The Court and Pretrial will not be able to secure the safety of the community if this defendant is released pending his trial.

## IV.   CONCLUSION

The Court should order the defendant detained pending trial because there are no conditions that will reasonably assure the safety of the community and the defendant's compliance with court orders while he is on pretrial release. The defendant is not amenable to supervision, and should be detained.

DATED: December 21, 2024                                  Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
IVANA DJAK
Assistant United States Attorney